HELEN MURPHY, as Administratrix, etc., of JOSEPH MURPHY, Deceased, Respondent, *v.* STANLEY COURT REALTY AND CONSTRUCTION COMPANY, Appellant.

First Department, November 28, 1924.

Negligence — action to recover for death of plaintiff's intestate who was killed when he fell down elevator shaft in defendant's apartment house — intestate, grocery deliveryman, was taken to second floor in service elevator — uncontradicted evidence that door at second floor was closed after intestate left elevator — issue left to jury was whether or not door was open or closed when intestate returned to elevator — court instructed jury that if door was closed and intestate opened it, or if intestate consciously walked through open door, defendant is not liable — evidence did not justify submission of issue to jury under said instructions — verdict in favor of plaintiff against evidence — evidence — error to admit testimony that intestate was careful man.

In an action to recover damages for the death of plaintiff's intestate who was killed when he fell down the shaft of the service elevator from the second floor of defendant's apartment house to which he had been taken by the elevator man to deliver groceries, it was error for the court to submit to the jury the question whether or not the door to the elevator shaft was left open, under instructions that if the elevator door was closed and the plaintiff's intestate opened it and then fell down the elevator shaft, the plaintiff could not recover

or, if the plaintiff's intestate consciously walked through the open door the plaintiff could not recover, since there was no evidence as to how the accident happened, and since the uncontradicted evidence was that the plaintiff's elevator man closed the door of the shaft at the second floor after plaintiff's intestate had left the elevator, and on returning from the tenth floor of the building discovered that the door to the second floor was open and later found the body of plaintiff's intestate at the bottom of the shaft; there was no evidence to justify an inference that the intestate walked through the door in the belief that the elevator was waiting for him.

It was error to admit evidence on behalf of plaintiff that her intestate was a careful man, which evidence was admitted for the purpose of showing that he did not consciously walk through the open door of the elevator shaft.

APPEAL by the defendant, Stanley Court Realty and Construction Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on or about the 17th day of October, 1923, upon the verdict of a jury for $25,000, and also from an order entered in said clerk's office on the same day denying the defendant's motion for a new trial made upon the minutes.

*Pettigrew, Glenney & Bovard* [*Bertrand L. Pettigrew* of counsel], for the appellant.

*Frank L. Tyson* [*Ralph O. L. Fay* with him on the brief], for the respondent.

MERRELL, J.:

The action was for negligence in causing the death of the plaintiff's intestate. The defendant is the owner of a twelve-story apartment house at the northwest corner of One Hundred and Sixth street and West End avenue. Plaintiff's intestate was employed as a chauffeur and deliveryman for Park & Tilford. On May 29, 1922, between two and three o'clock in the afternoon, Murphy, plaintiff's intestate, went to the defendant's apartment house for the purpose of delivering groceries to the O'Donovan apartment situate on the second floor, east, of the apartment house. The main entrance to the apartment house is on One Hundred and Sixth street, and the entrance to the basement used by deliverymen is on West End avenue. On the day in question Murphy entered the service elevator and was taken by the elevator operator, Law, to the second floor. There was a second passenger in the elevator at the time, one Heesemann, who was also delivering groceries from a neighborhood grocery store. Plaintiff's intestate left the elevator at the second floor where there is a private hallway connecting the O'Donovan apartment with the service elevator. The elevator operator took Heesemann, the other deliveryman, to the sixth floor, where he waited for him to deliver some groceries and then proceeded to the tenth floor where Heesemann delivered more

groceries. Afterward Heesemann re-entered the elevator at the tenth floor and the operator ran the car down to the second floor where they discovered that the door between the elevator shaft and the O'Donovan private hallway was open. Law inquired at the O'Donovan apartment for Murphy, plaintiff's intestate, and was told that he had gone. He then re-entered the elevator and passed to the basement where Heesemann left the car. Law, the elevatorman, then told the superintendent of the building of the circumstances and Murphy's body was discovered at the bottom of the elevator shaft and beneath his body was his delivery box, crushed. While Law, the operator, was waiting for Heesemann at the sixth floor, he testified he heard a rumble down the shaft like something rumbling against a door, but paid little attention to it. Murphy, plaintiff's intestate, was last seen by a daughter of Mrs. O'Donovan taking his groceries from the box in the O'Donovan kitchen.

The testimony of the witnesses produced by both plaintiff and the defendant was substantially as follows:

Henry A. Brinckman, who was defendant's superintendent of the apartment house, was called as a witness by the plaintiff, and testified that he had been superintendent over four years and that his duty was to look after the locks in the doors and that no changes had been made on the lock of the door to his recollection. He first knew of the accident when the operator asked him if he had seen a deliveryman coming out of the door, and he then looked in the shaft and saw Murphy's body. He went up to the second floor a half hour later and found the shaft door leading to the O'Donovan apartment closed.

George L. Amouroux, called as witness for plaintiff, testified that he was a civil engineer and architect for twenty-five years, and that he was examining engineer and inspector in the bureau of buildings for fifteen or sixteen years and examined many elevator shafts. At the request of plaintiff's attorney he inspected the elevator shaft in question and took a photograph and made a drawing of the shaft door and servants' hallway leading to the O'Donovan apartment on the second floor. He testified that the elevator shaft door was a wood door lined with sheet metal and contained a glass panel. The servants' hallway leading from this elevator to the O'Donovan apartment is eleven feet six and one-half inches in length and approximately three feet in width. In the hallway on the right is a door leading to the kitchen, while at the far end of the hallway from the elevator is a door leading to the entrance hall of the apartment proper. He further testified that the shaft door, if slammed, would rebound without catching, and

that the lock appeared to have been hammered, and that the spring which held the tongue down was rather weak. He also testified that he could not open this elevator shaft door from the hall side when the door was closed.

Fred Seyford, called as a witness for plaintiff, testified that he was and had been a building inspector of elevators for the city of New York for four years. Witness testified that on June second, four days after the accident, he tested the shaft door of the service elevator on the second floor and tried to open the door by giving it a push from the service hall side, but could not open it in this manner, and also found the lock in good condition. At his previous examination of this same shaft door on April 13, 1922, he found the lock all right and the door operated in good condition.

Heesemann, the other passenger in the elevator, was called as a witness for plaintiff, and testified that he was a deliveryman for a neighborhood grocer, and was on the elevator with Murphy on May 29, 1922, and that the elevator operator left Murphy off at the second floor and then closed the door and also the collapsible gate of the elevator and took him up to the sixth floor; that the operator closed the door before the elevator started, and let the witness off at the sixth floor and waited until he had made his delivery and then went up to the tenth floor; that after he had re-entered the elevator at the tenth floor, the operator took him down to the second floor and said: "Why, this door is open;" and that the operator then made inquiries and then took the witness down to the basement, where the witness left the building.

William Law, called as a witness for defendant, testified that he was employed as elevator operator in the apartment house in question in May, 1922, and had worked there three or four months previous to May 29, 1922, on the service elevator; that he started work at six-thirty A. M. and quit around four P. M. He testified that he carried Murphy and Heesemann in the elevator to the second floor where he let Murphy out and said to him: "I will pick you up on my way down." Then he closed the door and took Heesemann up to apartment 6 and there heard a rumble down the shaft like something rumbling against a door, but did not pay much attention to it. He then took Heesemann to the tenth floor and then took him down to the second floor and found the door open at the second floor. Then he asked a lady at the O'Donovan apartment about Murphy and she said: "He is gone." He then closed the door and went on down and told the superintendent about it, and they discovered Murphy's body in the bottom of the shaft. Law testified that he never had had trouble with the door latching when it closed. He testified

that he noticed the same evening that the staple in the shaft door was drawn so that the latch would not hold, and that the door did not close at all but left a little gap; that though the lock stayed unrepaired after the accident, it held the door; that he could open the door from the hallway side by raising it from the bottom, and had known the door to have been opened by tradespeople in this way; that the light in the service hallway was lighted by the O'Donovan maid when the witness took her in the service elevator up to the roof just before the accident.

At the close of the plaintiff's case counsel for the defendant moved for dismissal of the complaint upon the ground that no negligence had been shown on the part of the defendant which was the proximate cause of the death of the deceased. This motion was denied, and exception was taken to the denial. At the close of the evidence in the case counsel for the defendant moved on the whole case for dismissal of the complaint and for the direction of a verdict for the defendant on the ground, *first*, that no negligence had been shown on the part of the defendant which was shown to be the proximate cause of plaintiff's intestate's death, and, *second*, that upon all the evidence it affirmatively appeared that plaintiff's intestate was not in the exercise of due care at the time of the accident which resulted in his death. This motion was denied by the court, to which counsel for the defendant duly excepted.

In charging the jury the court narrowed down the issues to the simple question as to whether or not the door of the elevator shaft was open or closed when the plaintiff's intestate left the O'Donovan apartment after delivering his supplies, and approached the elevator shaft. The court instructed the jury that if they found from the evidence that the elevator door was closed, whether latched or unlatched, and that the plaintiff's intestate opened the door and then fell down the elevator shaft, there could be no recovery against the defendant, and that the verdict of the jury must be in favor of the defendant. The court also instructed the jury if they found the door was closed, either latched or unlatched, and that plaintiff's intestate through lifting and unlatching it thereby fell down the elevator shaft, there could be no recovery on the part of the plaintiff. The court also instructed the jury if the plaintiff's intestate consciously walked to the elevator shaft and the door at that time was open and he fell down the shaft, the verdict of the jury must be in favor of the defendant.

It seems to me that under such instructions of the court which became the law of the case, the evidence in the case did not warrant its submission to the jury, and that there was no evidence in the case within the rules laid down by the court which justified the

rendition of the verdict.   The positive evidence on the part of Law, the elevator operator, and Heesemann, the other passenger in the car, who was called as a witness in plaintiff's behalf, was that after Murphy alighted from the car at the second floor, the elevator door was closed.   In an attempt to overcome this positive evidence the plaintiff offered proof tending to show that the spring to the catch which held the elevator door shut was somewhat weakened, and that on some occasions when the door was slammed, it had rebounded and had not securely latched.   Evidence was also offered by the plaintiff that on some previous occasions the elevator door had been left open; but there was no evidence that on the occasion when the plaintiff's intestate must have passed through the door, the door was wide open when plaintiff's intestate approached the shaft.   Evidence was offered on the part of the defense that, although the door had been closed and latched, still it was possible, by raising the door from the hall side by a twenty-five pound lift, that the door latch could be disengaged and the door slid open.   Evidence was offered on the part of the defense that the latch was in perfect working order both before and after plaintiff's intestate came to his death.   Plaintiff, respondent, contends that the jury was justified in inferring from the fact that plaintiff's intestate was found dead at the bottom of the shaft, that he passed into the elevator through the wide open door under circumstances justifying his belief that the car was waiting for him and that the door had been opened by the elevator operator in anticipation of his re-entry of the car.   I do not think there is any fact upon which such inference can be drawn.   If plaintiff's intestate after delivering his groceries returned to the elevator door and either himself lifted it in the manner described so as to disengage the latch and open the door, or finding it slightly ajar did open it, there would have been no cause of action against the defendant for negligence, because the plaintiff's intestate would clearly, under such circumstances, have been guilty of contributory negligence as matter of law.   It seems to me that in order to arrive at the verdict which was rendered, the jury must have speculated as to what happened, and that there was no fact proven justifying an inference that the decedent entered the shaft within the conditions laid down by the trial court, in order to charge the defendant with negligence.   It is entirely permissible to indulge inferences in support of a finding of a jury, but such inferences must be based upon proven facts, and here no facts were proven upon which the jury could infer that the decedent entered the shaft under circumstances imputing negligence to the defendant.   The positive evidence in the case which was undis-

puted was that the elevator door was closed after Murphy left the car and before it ascended to the upper floors. There is absolutely no proof in the case that the door was afterwards opened, except the fact that it must have been open at the time Murphy passed through it and fell down the shaft. There is as much reason for inferring that the door was opened by Murphy himself, either by lifting and unlatching it or by finding it slightly ajar, as some of the witnesses testified it had been on other occasions, and opening it himself, as there would be to infer that the door was left wide open when the elevator passed to the upper floors. The verdict is based entirely on speculation as to who was responsible for the open door through which Murphy must have passed when he came to his death.

I am also of the opinion that the trial court erred in permitting the plaintiff to prove upon the trial that the plaintiff's intestate was a careful man. A salesman of Park & Tilford, the employer of the deceased, testified that he had known the deceased for many years and that he was a very careful man. This testimony was received under the objection and exception of counsel for the defendant. The respondent seeks to minimize the importance of this testimony by the claim that that testimony was merely directed to the methodical habits of the deceased in taking orders, etc., for his employer. The court, however, in its charge to the jury instructed them that if they found from the evidence that the plaintiff's intestate consciously walked to the elevator shaft, and that the door at that time was open and he fell into the shaft, their verdict must be in favor of the defendant; and that it was upon that part of the case that testimony was introduced that plaintiff's intestate was a sober, industrious, careful character, *and that that was the sole purpose of that testimony* so it might be determined by the jury whether or not from the facts and circumstances developed plaintiff's intestate so deliberately walked to the elevator shaft and fell down. Under the interpretation of the court as to its applicability, I think the testimony offered and objected to by the defendant was clearly incompetent.

Because of the failure of the plaintiff to show that her intestate came to his death by reason of any negligence of the defendant and by reason of the error above mentioned, the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., SMITH, FINCH and MARTIN, JJ., concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide the event.